GREENSPRING RACQUET CLUB,
INC., et al., Plaintiffs,

v.

BALTIMORE COUNTY, MARYLAND,
Defendant.

No. CIV. NO. AMD 99–469.

United States District Court,
D. Maryland.

Sept. 27, 1999.

H. Russell Smouse, Julius W. Lichter, Towson, Robert H. Freilich, Freilich, Leitner & Carlisle, Kansas City, MO, for plaintiffs.

Virginia W. Barnhart, John E. Beverungen, Jeffrey Grant Cook, Towson, MD, for defendant.

## MEMORANDUM

DAVIS, District Judge.

This is a poorly disguised zoning case masquerading as a collection of constitutional claims. Plaintiffs, Greenspring Racquet Club, Inc., William Hirshfeld, and Loretta Hirshfeld (collectively "Greenspring"), own the property which is the subject of this litigation: a parcel consisting of approximately 5.5 acres located on the east side of Falls Road, north of Joppa Road in Baltimore County, Maryland. Plaintiffs currently operate a tennis club on the property but they would rather raze the tennis club and construct one or more office buildings and a parking garage.

Plaintiffs have filed a seven count second amended complaint seeking equitable relief and damages in respect to the County's application to their property of County Council Bill No. 111–98 ("the Ordinance"). To date, the County has not approved Greenspring's site plans, thus delaying construction; a prolonged challenge in state court is in the offing, with the effect, perhaps, of permanently depriving Greenspring of the opportunity to redevelop its property in an economically advanta-geous environment. Pending before the court is the County's Motion to Dismiss. The issues have been fully briefed and no hearing is necessary. For the reasons stated below, I shall grant the County's motion.[1]

(i)

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D § 1349 at 192–93 (1990).

Rule 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A claimant is not required to "set out in detail the facts upon which he bases his claim" so long as the claim "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Only when the factual allegations in support of a claim are not well-pleaded (e.g., when they are "functionally illegible" or "baldly conclusory," *Shuster v. Oppelman*, 962 F.Supp. 394, 395 (S.D.N.Y.1997)), should they not be accepted as true and the claim dismissed.

---

1. Greenspring's Motion to Strike Impertinent and Scandalous Material, its Motion to Stay and the County's Motion to Strike are denied as moot.

Application of the above principles to the instant case compels the conclusion that the motion should be granted.

(ii)

Accepting Greenspring's account of the facts as true, the following constitutes the course of events leading to this litigation. Greenspring developed plans to raze the tennis club currently occupying its site and to construct two adjoining office towers, one five stories and one six stories, with a structured parking garage. On June 10, 1998, Greenspring submitted a letter to the County Development Review Committee ("DRC"), requesting that it be exempted from portions of the process for plan approval delineated in Division 2 of the County Development Regulations. Balt. County Code §§ 26–201 to 26–217.[2] In this letter, Greenspring explained that it was entitled to be exempted from this process pursuant to Baltimore County Code § 26–171(b)(9) because its proposed development qualified as a "minor development" under the Code. Attached to this letter request was a site plan for the proposed demolition and construction. The DRC indicated by letter dated June 17, 1998, that it would not allow the requested exemption from portions of the review process, and it held an open meeting on June 22, 1998, to further consider Greenspring's request. Greenspring's request was never granted.

Meanwhile, on October 5, 1998, the County Council enacted the Ordinance, which imposes a height limit of 35 feet and a floor area ratio limit of 0.5 for certain new construction on Greenspring's site and one other site in Baltimore County.[3] Greenspring promptly requested that the Baltimore County Planning Board rezone its property from a "Business Major" zone to an "Office/Residential–2" zone. This request was denied on March 18, 1999.

On April 27, 1999, Greenspring submitted a second request to the DRC asking again that it be exempted from the specified procedural requirements of Division 2. In addition, Greenspring attached a revised site plan describing construction of one eight story office tower with garage, and it requested that it be exempted from the limitations of the Ordinance. According to Greenspring, this letter explained that under Section 2 of the Ordinance, the revised development plan qualified for exemption from the height and floor ratio requirements because the new construction is confined to the same footprint as the preexisting improvements on the site, the square footage per story of the proposed building is less than the preexisting one, and no public works agreement is required.

The DRC held an open meeting to consider Greenspring's request for exemptions from both portions of the review process and the height/floor area ratio restrictions of the Ordinance. It denied the request for exemption from the review process, indicating that Greenspring should speak with Arnold Jablon, the Director of Permits and Development Management, who could direct the DRC to later approve the request. The request for exemption from the height and floor area ratio requirements of the Ordinance was not discussed. *See* County's Motion to Strike, Ex. 1 (Transcript of the Meeting of the DRC on May 10, 1999).

---

**2.** These portions consisted of Community Input Meetings, Hearing Officer Review and *de novo* appeal to the Baltimore County Board of Appeals.

**3.** The Ordinance does not specify Greenspring's site but limits the maximum building height to 35 feet and the FAR to 0.5 of any proposed building in zones classified as "Business Light," "Business Major," or "Business Rural," when "the exterior wall of any proposed building ... is within 750 feet of [a Rural Conservation] Zone." Balt. County Council Bill No. 111–98. Greenspring claims these restrictions cover only its site and one other. The County asserts that the Ordinance affects 150 sites. County's Motion to Dismiss at 9. For the purposes of the mo-

## (iii)

The amended complaint contains seven counts: two claims alleging unconstitutional takings without just compensation (one facial, one as applied); two claims alleging equal protection violations (one facial, one as applied); one claim alleging a violation of procedural due process; and two claims alleging substantive due process violations (one facial, one as applied). I shall address these in turn.

## Takings Claims

■ Greenspring alleges that the County has effectively taken its property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[4] The facial and most of the variations of the "as applied" takings claims fail, among other reasons, because Greenspring does not have any constitutionally protected property interest that was affected by the County's enactment and application of the zoning laws and regulations at issue. Furthermore, while I shall assume, for the purposes of the pending motion, that Greenspring does have a constitutionally protected property interest insofar as it claims an entitlement to a nondiscretionary exemption from the Ordinance (as provided in Section 2 thereof), this "as applied" claim also fails because Greenspring does not sufficiently allege that it has been deprived of substantially all of the economic value of its property in consequence of its failure to obtain the desired exemption.

## Facial Taking

■ Greenspring contends that the enactment of the height and floor area ratio restrictions of the Ordinance on their face effectively deprived it of "all or substantially all of the economic use and/or value" of its property.[5] Second Amended Complaint at ¶¶ 45, 47, and 60. However, Greenspring has no constitutionally protected property right in the airspace or anything else which was affected by the Ordinance, so it fails to state a claim that the County took something from it by enacting the Ordinance.

■ Since 1909, the Supreme Court has upheld height restrictions on buildings which a state or local legislative body reasonably concluded promoted "the health, safety, morals, or general welfare." *Welch v. Swasey,* 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923 (1909). Even in the absence of height restrictions, the Supreme Court in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 130, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), made it clear that no "taking" is established "simply by showing that [plaintiffs] have been denied the ability to exploit a property interest [in air space] that they heretofore had believed was available for development ...."[6] As in *Penn Central,* Greenspring continues to be able to use its building as it has in the past, and the Ordinance does not prohibit all air development, just development higher than 35 feet.

---

tion, I assume that Greenspring's allegations are true.

**4.** The Fifth Amendment provides "nor shall private property be taken for public use, without just compensation," and applies to the states through the Fourteenth Amendment. U.S. Const. Amends. 5, 14; *see First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 310 n. 4, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

**5.** Greenspring also asserts that the Ordinance on its face "took title" to the airspace above its property and thus effected a taking. However, this claim fails because Greenspring does not allege that the County repossessed its title to the property or encumbered it in any

way. A takings claim cannot rest upon a "symbolic taking" of a title.

**6.** Greenspring asserts a "vested property right" in the development it would have been able to achieve under the zoning law applicable to its property prior to the enactment of the Ordinance. However, it is well settled in Maryland that such a right does not vest unless the property owner had acquired a building permit under the old law and had commenced construction. *Prince George's County v. Sunrise,* 330 Md. 297, 623 A.2d 1296 (1993); *Richmond Corp. v. Prince George's County,* 254 Md. 244, 255 A.2d 398 (1969). Greenspring never acquired a permit under the old law and had not commenced demolition and construction.

Moreover, the rationales cited by the County to support its enactment of the Ordinance clearly fall within those recognized by the courts as reasonable bases for zoning laws. *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 828–29 (4th Cir.1995)(holding that proper bases for zoning determinations include concern about further growth in rural areas, residential density, community aesthetics, traffic congestion, and water supplies). In urging passage of the Ordinance, County Councilman T. Bryan McIntire explained that the height and floor area ratio restrictions would have esthetic benefits, would decrease transportation congestion, improve flood management, and conserve water and sewer resources. Motion to Dismiss at 11 (*quoting* Councilman McIntire). Thus, the Ordinance represents a valid exercise of the County's authority to protect the health and welfare of its residents, and its enactment was without a cognizable effect—constitutionally speaking—upon the protected property interests enjoyed or owned by Greenspring.

### As Applied Taking

Greenspring asserts that three actions (or, more correctly, refusals to act) by County officials constitute unconstitutional takings: (1) the County's refusal to reclassify Greenspring's property so as to exclude it from the Ordinance; (2) the County's refusal to exempt Greenspring's plans from the public meeting and hearing officer review process specified in Division 2 of the County's development regulations; and (3) the County's refusal to exempt Greenspring's amended site plan from the Ordinance pursuant to Section 2 thereof.[7] It is plain, however, that neither singly nor in combination do these contentions state a

claim under the Fifth and Fourteenth Amendments.

The first two of these claims, like the facial claim discussed above, fail to state a claim because Greenspring lacked a constitutionally protected property interest that the County's actions affected. The third fails to state a claim because Greenspring has failed to allege sufficiently—and is unable so to allege—that it was deprived substantially of all the economic value of its property.

The first two as applied claims will be dismissed for lack of a cognizable affected property interest. As the Supreme Court held in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to have a property interest, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate entitlement to it." *Id.* at 577. The Fourth Circuit takes the position, predominant in the circuits which have considered the issue, that such an entitlement is created when, "under state or municipal law, the local agency lacks all discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest." *Gardner v. City of Baltimore*, 969 F.2d 63, 68 (4th Cir.1992)(collecting cases); *accord Front Royal v. Town of Front Royal*, 135 F.3d 275, 288 (4th Cir. 1998); *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir.), *cert. denied*, 516 U.S. 813, 116 S.Ct. 64, 133 L.Ed.2d 27 (1995); *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir.), *cert. denied*, 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993).

---

7. This third claim is clearly not ripe for decision because, despite Greenspring's claim that its request for a Section 2 exemption "was denied on May 10, 1999 by the DRC," Second Amended Complaint at ¶ 58, the transcript of that meeting reveals that the request for Section 2 exemption was not even discussed at that meeting, let alone denied. Motion to Strike, Ex. 1 (Transcript of the Meeting of the Development Review Committee on

May 10, 1999). In any event, Greenspring is pursuing an administrative appeal of the DRC's decisions and of the County's refusal to reclassify its property's zoning designation. Nevertheless, I discuss the alleged Section 2 exemption denial here because if Greenspring indeed has a viable federal claim, I would need to consider whether to grant a stay and whether abstention would be appropriate.

■ Clearly, the County exercises discretion when it considers requests to reclassify the zoning of property. *See* Balt. County Code § 2–356.[8] Greenspring's hope that the County would reclassify its site from "Business Major" to "Office/Residential 2" is a mere unilateral expectation and not an entitlement. Similarly, the County's refusal to waive portions of the Division 2 process did not affect a constitutionally protected property interest. I assume for the purposes of the motion that Greenspring qualified for a waiver under Baltimore County Code § 26–171(b)(9). Even if the grant of such a waiver is arguably nondiscretionary when an applicant qualifies, however, the waiver would not have resulted in a nondiscretionary approval of Greenspring's plans to build. Greenspring would still have had to submit a development plan pursuant to § 26–203, undergo preliminary review by the department of public works pursuant to § 26–204, and then undergo review by over thirteen County agencies pursuant to § 26–205, before getting consideration by the planning board for final approval. *See id.* at § 26–208. Discretion is exercised by the County at each of these stages; accordingly, Greenspring has no constitutionally protected entitlement of which it has been deprived and for which it might seek a remedy in federal court.

■ Analysis of the third as applied taking claim is slightly different but the outcome is the same. At this stage of the proceedings, I assume that Greenspring has a property interest in obtaining a Section 2 exemption from the height and floor ratio requirements of the Ordinance [9] because the grant of such an exemption is nondiscretionary provided Greenspring demonstrates it has fulfilled the exemption's prerequisites as spelled out in the Ordinance. I further assume the truth of Greenspring's allegation that it demonstrated to the County that its amended plan fulfilled the Section 2 requirements and that it is, therefore, entitled to the exemption. I further assume that the exemption would have resulted in a nondiscretionary approval of its amended site plan to build the one eight story office building and garage. Nevertheless, despite its property interest in obtaining approval for the amended site plan, Greenspring fails to state a claim because it fails to allege a key element of a takings claim: that it was deprived "of substantially all economic value" of its property.

The Supreme Court recently reiterated this well established element of a takings claim in *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). "A land use regulation does not effect a taking if it 'substantially advances legitimate state interests' and does not 'deny an owner economically viable use of his land.'" *Id.* at 384–85, 114 S.Ct. 2309(citations omitted). As the Fourth Circuit explained in *Front Royal,* "[n]ot all regulatory deprivations amount to regulatory takings, and a regulatory deprivation that causes land to have 'less value' does not necessarily make it 'valueless.'" 135 F.3d at 286. This principle is controlling in the case at bar.

---

8. While the Board of Appeals must make certain findings before reclassification is permitted, those findings are based upon its exercise of discretion. The County Code specifies that in deciding whether "[t]he prospective reclassification is warranted by [the change in the neighborhood,]" the Board must consider a host of factors, including population trends, adequacy of transportation, water, sewerage and solid waste disposal facilities, and the proposed project's impact on water quality and fish, wildlife and plant habitats. Balt. County Code § 2–356(j).

9. The Ordinance provides in relevant part: "Section 2. And be it further enacted that this Act shall not apply to ... the redevelopment of an improvement existing on October 5, 1998, if (1) the improvement occurs within the same footprint, (2) the square footage, per story, of the proposed improvement is equal to or less than the square footage, per story, of the existing improvement and (3) a public works agreement is not required, in the opinion of the Directors of Public Works, Permits and Development Management, and Environ-

While Greenspring's complaint recites that it has been deprived of "all economic benefit of [its] property," this is merely a conclusory assertion at odds with facts which are subject to judicial notice; indeed, Greenspring does not (because it cannot) contradict the County's assertion that it currently operates an economically viable tennis club at the site. In any event, Greenspring has two obvious economic uses for its property: it could continue operating the tennis club, or it could raze the club and build an office building not exceeding 35 feet in height or 0.5 floor area ratio.[10] Thus, I conclude that Greenspring's assertion that it has been deprived of "all or substantially all of the economic use" of its property is "baldly conclusory" and insufficient to withstand a motion to dismiss.[11]

**Equal Protection Claims**

■ Greenspring alleges both facial and as applied claims that the County has deprived it of equal protection of the laws in the County's enactment of height and floor area ratio restrictions, and in the County's application of these restrictions to its property. These purported claims fail as a matter of law because even if one assumes that the Ordinance affects only two properties in the entire County, Greenspring alleges no basis upon which a fact finder could find a denial of equal protection.

■ "[E]qual protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). When "government action [does] not burden a fundamental right or employ a suspect classification the pertinent question for determining whether the governmental action violated the Equal Protection Clause is whether the ... officials reasonably could have believed that the action was rationally related to a legitimate governmental interest." *Front Royal*, 135 F.3d at 290. The legislators' actual motivation is irrelevant. *Id.; accord United States v. O'Brien*, 391 U.S. 367, 383–84, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). As the Supreme Court held in *Beach Communications, Inc.*:

> [T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it. Moreover because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.

508 U.S. at 315, 113 S.Ct. 2096 (internal quotations and citations omitted); *accord Front Royal*, 135 F.3d at 290.

---

mental Protection and Resource Management."

**10.** As to the facial takings claim, Greenspring's own complaint suggests a third possibility. While the Ordinance apparently precludes it from building the two office buildings (one five stories, one six stories) and garage envisioned in its first site plan, its complaint asserts that it is entitled *on the face* of Section 2 of the Ordinance to build an eight story office building with garage in the footprint of the current improvements.

**11.** Despite the fact that the denial of a Section 2 exemption would constitute a quasi judicial act, the more relaxed standard enunciated in *Dolan* does not govern the determination of whether Greenspring has been deprived of the economic use of its property. *See* 512

U.S. at 384–85, 114 S.Ct. 2309 (holding that the city effectuated unconstitutional taking by prohibiting plaintiff from doubling the size of her retail store unless she deeded over a portion of her property to it.). The Supreme Court held that the requirement that the owner deed over part of her property was critical to the application of a relaxed standard. *Id.* By contrast, Greenspring will not be required to deed any portion of its property to the County.

Greenspring also claims that the County effectuated a "taking" in requiring it to pursue unconstitutionally burdensome procedures for administrative and judicial relief from a wrongful zoning decision. Second Amended Complaint at ¶ 58. This claim fails because, as I explain in text, the delay which Greenspring speculates will occur in the appeals process does not render that process unconstitutional. *See infra* at 606.

■ Furthermore, the mere fact that one is treated differently than someone who is similarly situated is not sufficient to run afoul of the equal protection clause. As the Fourth Circuit explained:

> If disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim.

*Sylvia Dev. Corp.*, 48 F.3d at 825.

Greenspring does not allege that any fundamental right was adversely affected by the County's actions. Moreover, it does not allege any invidious discrimination based upon suspect categories (i .e., race, ethnicity, national origin, religion or sex). Thus, rational basis review applies. Greenspring alleges merely that the Ordinance, on its face and as applied to it, singles out its property and one other for adverse treatment while other "similarly situated" (but differently zoned) properties were unaffected by the height and floor area ratio requirements. Greenspring contends further that construction on those similarly situated properties could also have an effect on the rural zones the Ordinance seeks to protect.

These arguments are unavailing. While it is patently clear that differently zoned properties are not similarly situated as to zoning, these arguments also fail because Greenspring does not allege an invidious purpose. Government is not consigned to inactivity because it cannot legislate comprehensively in one step. The fact of disparate treatment, in the absence of invidious discrimination, does not invoke a more stringent standard of review. As a matter of law, the Ordinance is rationally supported by legitimate objects of the County in its regulation of land use within its borders. No more searching standard of review is required or justified.

### Procedural Due Process Claim

■ Greenspring contends that the County's procedures for administrative and judicial relief from a wrongful zoning decision are unconstitutional.[12] The gravamen of this claim is Greenspring's allegation that because it might take "in excess of two years" to pursue administrative and judicial appeals, these procedures are unconstitutionally burdensome. However, Greenspring does not explain how it arrived at this two year projection, and in any event, delays of this magnitude are not unconstitutional burdens. Even when a significant delay is incurred in reversing a **wrongful** zoning board decision, and even when that delay causes the plaintiffs to default on their construction loans and lose everything to foreclosure, the Fourth Circuit has held that plaintiffs have not been deprived of procedural due process. *Sylvia Dev.*, 48 F.3d at 817, 827(holding that 11 month delay in reversing wrongful zoning board decision did not deprive plaintiff of due process).

Greenspring speculates that it could take in excess of two years to overturn County decisions regarding its property. This delay, it believes, is unwarranted. But it cannot, on the one hand, demand due process in the review of County decisions, and on the other hand, claim that the time it would take to provide this process renders it unconstitutional.

### Substantive Due Process Claims

■ Greenspring alleges that the County deprived it of substantive due process when it refused to recognize that its amended site plan should be exempt from

---

**12.** Because a successful due process claim depends upon the existence of a cognizable property right, *Sylvia Dev. Corp.*, 48 F.3d at 826–7, Greenspring's due process claim fails as to the passage of the Ordinance, the failure to reclassify the zoning designation, and the refusal to .exempt the plans from portions of the Division 2 procedures for plan approval. I assume for the purposes of the motion that as to its amended site plan, Greenspring did have a cognizable property interest in the Section 2 exemption from the height and floor area ratio requirements of the Ordinance. *See supra* at 604.

the height and floor area ratio requirements of the Ordinance.[13] This allegation fails to state a claim. As the Fourth Circuit summarized in *Front Royal:*

> [S]ubstantive due process is a substantially narrower concept than procedural due process, for it serves as an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions. We have determined that this absolute check is warranted only where no process could cure the deficiencies in the governmental action. In other words, governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it.

135 F.3d at 287–88 (internal quotations and citations omitted). This high standard is not remotely satisfied here.

Greenspring's substantive due process claim fails because there exists a post-deprivation process which Greenspring is pursuing, which can rectify the deprivation. *Id.* Its appeal of the denial of the Section 2 exemption in state fora might result in its obtaining the exemption. In any event, the mere act of denying a Section 2 exemption falls far short of the type of state action which is "so arbitrary or irrational, so unjustified by any circumstance or governmental interest" that the "residual protections" of the equal protection clause are invoked. *See id.; accord Sylvia Dev.,* 48 F.3d at 827.

(iv)

For the reasons discussed above, I shall grant the County's Motion to Dismiss and dismiss all counts of Greenspring's second amended complaint with prejudice. A separate order follows.

alleges possession of a property interest and that state action deprived the claimant of the property interest. *Sylvia Dev.,* 48 F.3d at 827. As explained in text, I assume for the purposes of the motion that Greenspring had a property interest in the Section 2 exemption from the height and floor area ratio requirements of the Ordinance, and that the County deprived it of this interest in refusing to acknowledge its exemption. Thus, my discussion of Greenspring's substantive due process claim centers on the Section 2 exemption.

---

**13.** Greenspring also pleads violations of substantive due process (facially and as applied) in regard to the County's enactment of the Ordinance, and its refusal to waive portions of the Division 2 plan approval process. For the reasons set forth *supra* at 604, these claims are dismissed for want of a constitutionally protected property interest. It is well settled that a claim of substantive due process under the "property prong of the Fourteenth Amendment" is not stated unless the claimant