**GREENSPRING RACQUET CLUB, INC., et al., Plaintiffs,**

v.

**BALTIMORE COUNTY, MARYLAND, Defendant.**

**Civil No. AMD99–469.**

United States District Court, D. Maryland.

Nov. 30, 1999.

H. Russell Smouse, Julius W. Lichter, Towson, MD, Robert H. Freilich, Freilich, Leitner & Carisle, Kansas City, MO, for plaintiff.

Virginia W. Barnhart, John E. Beverungen, Jeffrey Grant Cook, Towson, MD, for defendant.

for corrective action under that section within the time agreed upon by the Commissioner." *Id.*

## MEMORANDUM

DAVIS, District Judge.

On September 27, 1999, I dismissed with prejudice the seven count complaint brought by plaintiff Greenspring Racquet Club, Inc.[1] *Greenspring Racquet Club, Inc. v. Baltimore County,* 70 F.Supp.2d 598 (D.Md.1999). Now pending is defendant Baltimore County's motion for attorney's fees pursuant to The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). On the basis of the findings and conclusions set forth herein, I am persuaded that all of Greenspring's claims were "frivolous, unreasonable, [and] without foundation." *Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597, 606 (4th Cir.1997). Accordingly, I shall award attorney's fees to the County in the amount of $33,522.50.

### (i)

Greenspring brought suit on January 29, 1999, in a disorganized eight count complaint naming ten defendants. At a hearing on April 21, 1999, I dismissed the complaint with leave to amend and with instructions to plaintiff's counsel to properly allege separate counts identifying their basis in law. On May 14, 1999, Greenspring filed a "Second Amended Complaint" alleging seven counts against the County challenging the County's enforcement of County Council Bill No. 111–98 ("the Ordinance") to prevent it from replacing its racquet club with one or more office towers more than three stories high.[2]

To summarize briefly, and reading Greenspring's complaint liberally as was required in respect to a motion to dismiss, *see Conley v. Gibson* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), I found that Greenspring had alleged the County applied the Ordinance to effectuate an unconstitutional "taking" of their property without just compensation, and to violate constitutional guarantees of due process and equal protection of the laws. Greenspring sought relief pursuant to 42 U.S.C. § 1983 for deprivation of constitutional rights under color of state law. I dismissed with prejudice all of plaintiff's claims.

The takings claims alleged a property interest sufficient to invoke a Fifth Amendment analysis,[3] however, they failed

---

1. The individual principals of Greenspring were joined as plaintiffs, however, the fees award made here is solely against the corporate plaintiff, Greenspring Racquet Club, Inc.

2. The property which is the subject of this litigation is a parcel consisting of approximately 5.5 acres located on the east side of Falls Road, north of Joppa Road in Baltimore County, Maryland.

3. I found Greenspring had made a sufficient showing for purposes of the motion to dismiss that it had a cognizable property interest because it was allegedly entitled to a nondiscretionary exemption from the Ordinance (as provided in Section 2 thereof). *See Greenspring Racquet Club, Inc.,* 70 F.Supp.2d at 603; *see Gardner v. City of Baltimore,* 969.F.2d 63, 68 (4th Cir.1992). However, Greenspring alleged a series of other affected property interests which even a cursory review of well-established law would have discounted. For example, Greenspring alleged a "title taking" but this was purely a symbolic title taking, unsupported in precedent, since Greenspring did not allege that the County had altered or encumbered its title in any way. Greenspring alleged the County had taken its rights in the airspace above its property, but the invalidity of such a property interest has been crystal clear at least since the Supreme Court's 1978 decision *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104,.130, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Greenspring asserted a "vested property right" in the development it would have been able to achieve under the zoning law applicable to its property prior to the enactment of the Ordinance. However, it is well-settled in Maryland that such a right does not vest unless the property owner had acquired a building permit under the old law and had commenced construction. *Prince George's County v. Sunrise,* 330 Md. 297, 623 A.2d 1296 (1993); *Richmond Corp. v. Board of Prince George's County,* 254 Md. 244, 255 A.2d 398 (1969). Greenspring never acquired a permit under the old law and had not commenced demolition and construction. Greenspring alleged other property interests which were just as obviously legally unsupportable as these. *See Greenspring Racquet Club, Inc.,* 70 F.Supp.2d at 603.

because Greenspring did not allege facts supporting its assertion that it had been deprived of "substantially all of the economic value of its property as a consequence of its failure to obtain the desired exemption." *See Greenspring Racquet Club, Inc.*, 70 F.Supp.2d at 602. This well-established element of a takings claim was reiterated by the Supreme Court as recently as 1996 in *Dolan v. City of Tigard*, 512 U.S. 374, 384–85, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

The equal protection claims failed because Greenspring alleged neither that a fundamental right had been compromised nor an invidious motive, either of which would have triggered heightened scrutiny.[4] Instead, rational basis review was appropriate, and the County's actions in enacting and enforcing the Ordinance were clearly justified by legitimate concerns about traffic congestion, protection of rural zones and other land use purposes. *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 828–29 (4th Cir.1995).

The procedural due process claim failed because the projected delay of two years to pursue administrative and judicial appeals does not constitute an unconstitutional burden. *See Greenspring Racquet Club, Inc.*, 70 F.Supp.2d at 604. Substantive due process was not violated because a post deprivation procedure exists which can rectify any wrongful deprivation, and indeed Greenspring is pursuing that process. *Id.* at 605. In any event, I found that denial of the Section 2 exemption fell "far short of the type of state action which is 'so arbitrary or irrational, so unjustified by any circumstance or governmental interest' that the 'residual protections' of the equal protection clause are invoked." *Id.* (*citing Sylvia Dev. Corp.*, 48 F.3d at 827).

(ii)

■ As a preliminary matter, Greenspring asserts that the County's motion for attorney's fees should not be considered because it was filed three days late. However, because the County has demonstrated good cause that the short, nonprejudicial delay in filing its application was the result of excusable neglect, I exercise my discretion under Fed.R.Civ.P. 6(b)(2) to accept the fees motion.

Rule 6(b)(2) provides that: "[T]he court for cause shown may at any time in its discretion ... permit [a motion to be filed after the time period specified in the rules] when ... the failure to [timely file] ... was the result of excusable neglect." "Excusable neglect" is "inadvertence, mistake, or carelessness," *In re SPR Corp.*, 45 F.3d 70, 72 (4th Cir.1995) (interpreting "excusable neglect" provision of Bankruptcy Code), which is excusable, " 'taking account of all relevant circumstances surrounding the party's omission.' " *Id.* (*quoting Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (interpreting "excusable neglect" provision of Bankruptcy Code)). In particular, courts are to exercise an equitable discretion to alter time limits after considering four factors: "(1) the danger of prejudice to the ... nonmovant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* (internal quotations omitted).

I have considered each of these factors and I find that they militate heavily in favor of acceptance of the County's motion

---

**4.** I note that Greenspring has suggested in neither its original complaint nor its amended complaint (or in its memoranda in opposition to defendant's motions to dismiss) that this case involved one of that narrow class of "vindictive action" equal protection cases recognized by some circuits. *See Olech v. Village*

*of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *cert. granted*, —— U.S. ——, 120 S.Ct. 10, 144 L.Ed.2d 841 (1999). Thus, its belated citation to *Olech* (in its opposition to the defendant's motion for attorney's fees) as providing a non-frivolous basis for one or more of its equal protection claims is unavailing.

for attorney's fees. Greenspring does not allege that it has been prejudiced by the County's three-day delay in filing its fees motion. The delay was a brief one and had no impact on these proceedings. The judgment of dismissal is now on appeal to the Fourth Circuit and the minor delay has not impeded the prompt resolution of the motion. Any appeal of the instant decision on the County's motion for attorney's fees might be easily joined with the appeal on the merits of Greenspring's claims.

Moreover, as affirmed in the affidavit of the lead attorney for the County, the reason for the delay was a personal family emergency utterly beyond his control to predict or anticipate; it was perfectly understandable that he would temporarily be distracted from some of his professional obligations such as the fees motion deadline in this case. Thus, for these reasons, and because, in fact, the attorney for the County did not rely upon his personal circumstances as an excuse to seek a long delay, I find that the County attorney acted in good faith. Accordingly, I deem the County's motion for attorney's fees timely filed.[5]

(iii)

As amended, 42 U.S.C. § 1988(b) provides in pertinent part, "In any action or proceeding to enforce a provision of section ... 1983 the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Because the County's motion to dismiss was granted on all counts, the County was clearly the prevailing party here.

Section 1988(b) is part of the Congressional scheme to promote enforcement of constitutional and civil rights law by private parties. *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *see also Christiansburg Garment Company v. EEOC*, 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (setting stan-dard for attorney's fees awards to defendants in actions under Title VII of the Civil Rights Act of 1964).[6] Thus, a different standard applies to determine whether fees will be awarded when a *defendant* prevails. As the Supreme Court explained, "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote vigorous enforcement ..." *Id.* at 422, 98 S.Ct. 694. Congress specifically intended the attorney's fees provision to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Id.* at 420, 98 S.Ct. 694. A second factor cited by the Supreme Court as discouraging fee awards to defendants in civil rights suits is the fact that an attorney's fee award to a prevailing plaintiff is an award "against a violator of federal law." *Id.* at 418, 98 S.Ct. 694.

The absence of these factors when a defendant prevails in such cases dictates that an award of attorney's fees to a defendant must be based on the "quite different equitable considerations," *id.* at 419, 98 S.Ct. 694, of discouraging groundless lawsuits. *Id.* at 420, 98 S.Ct. 694. Hence, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. 694. *See also DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir.1999); *Bryant Woods Inn, Inc.*, 124 F.3d at 606. "In applying these criteria," the Supreme Court cautioned, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. 694.

---

**5.** To be sure, the County should have filed a formal motion to enlarge time contemporaneously with the filing of its motion for attorney's fees.

**6.** The same standard applies to defendants' fees claims under § 1988 as under Title VII. *Hughes*, 449 U.S. at 14, 101 S.Ct. 173.

■ Applying the *Christiansburg* criteria to the present case dictates a grant of attorney's fees to the County. In particular, Greenspring's takings claims were without legal foundation. Greenspring asserted numerous theories of a property interest which were unjustly infringed by the County's actions. Only one of these theories had legitimate legal support. *See supra* n. 2 and accompanying text. But even as to this theory of property interest, Greenspring's takings claims failed because Greenspring failed to allege (and it could not allege) any facts supporting the well-established element of a takings claim that it had been deprived of "substantially all" economic value of its affected property. *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). Thus, I find that these takings claims were "frivolous, unreasonable, [and] ... without foundation." *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694.

Greenspring's due process and equal protection claims were even less well-founded. Even assuming a future appellate reversal of a wrongful decision in the state litigation regarding Greenspring's property, the alleged delay "in excess of two years" that Greenspring anticipated in the appeals process clearly does not rise to the level of a denial of due process. *See Sylvia Dev. Corp.,* 48 F.3d at 817, 827. As I explained in my earlier opinion, Greenspring "cannot, on the one hand, demand due process in the review of County decisions, and on the other hand, claim that the time it would take to provide this process renders it unconstitutional." *See Greenspring Racquet Club, Inc.,* 70 F.Supp.2d at 606. Likewise, Greenspring's substantive due process claim fell undeni-

ably and woefully short of the type of state action which is " 'so arbitrary or irrational, so unjustified by any circumstance or governmental interest' that the 'residual protections' of the equal protection clause are invoked." *Id.* at 606 (*quoting Front Royal v. Town of Front Royal,* 135 F.3d 275, 288 (4th Cir.1998)).

Any minimally attentive law student could have told Greenspring that its equal protection claims lacked legal basis. It did not allege any basis for heightened scrutiny of the County's actions, and those actions were clearly justified as rationally related to legitimate land use concerns. *Id.* at 603–604

At bottom, none of Greenspring's confused bluster about abstention could obscure the fact that its federal lawsuit was "frivolous, unreasonable, ... [and] without foundation." The mere fact that in *other* cases complaints alleging *materially dissimilar facts* survived motions to dismiss (or supported reasonable requests for temporary federal court abstention), when they were alleged in support of legal claims like those Greenspring undertook to assert here, does not militate in favor of a finding that Greenspring's claims were substantially justified as reasonable and non-frivolous. Accordingly, the County is entitled to an award of reasonable attorney's fees as a prevailing defendant in a case asserting "frivolous [and] unreasonable [claims, wholly] without foundation."

(iv)

The County requests attorney's fees in the amount of $36,829.[7] In accordance

---

7. Greenspring has limited its challenge to the fees request to the grounds discussed in the text and it has not objected in any manner to the *bona fides* or genuineness of the affidavits submitted by counsel spelling out their work in this case or the reasonableness and necessity for the work that the County's attorneys performed on the County's behalf. Furthermore, Greenspring has not objected to the fact—and therefore I deem Greenspring to have waived the issue—that the County has

used a market-rate compensation formula in its motion for attorney's fees, notwithstanding the fact that each of the attorneys representing the County is one of its own salaried employees. *Cf. American Federation of Government Employees, AFL—CIO, Local 3882 v. Federal Labor Relations Authority,* 944 F.2d 922, 934–38 (D.C.Cir.1991) (using market-rate compensation formula in awarding fees to salaried attorneys of union in Back Pay Act case).

with the local rules of this Court, the County provided to Greenspring quarterly statements documenting its intention to seek attorney's fees at the conclusion of the case. *See* Rules of the United States District Court (Md.), Appendix B, *Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases*, 1(c). These statements indicated the County would seek $25,605 in fees for the first quarter of litigation, and $18,000 for the second quarter.

Though attorneys employed by the Office of the County Attorney do not normally maintain time sheets, the attorneys handling this case recorded their time because, from the start, they perceived Greenspring's claims to be frivolous, and they decided they would lay the foundation for the unusual measure of seeking defendants' attorney's fees. Motion for Attorney's Fees at 7–8. According to these time sheets, the lead attorney on the case, Jeffrey Grant Cook, Esq., devoted 97.4 hours to the case during the first quarter, and 70 hours during the second quarter of litigation. The County Attorney, Virginia W. Barnhart, Esq., a more senior member of the Bar, expended 13.7 hours conferencing with Cook and reviewing his papers during the first quarter.

Pursuant to local rule "only one lawyer is to be compensated for intra-office conferences ... [except more than one lawyer may be compensated for] periodic conferences [that] are reasonably necessary for the proper management of the litigation." Accordingly, both Cook and Barnhart shall be credited for the 0.8 hour strategy conference held on February 3, 1999, at the commencement of the federal litigation, and both shall be credited for the 0.4 hour

strategy conference held on March 12, 1999. The award for Cook's time is reduced by 12.5 hours for the additional time spent conferencing with Barnhart, because Barnhart will be credited for that time. Thus, Barnhart shall be credited for a total of 13.7 hours, and Cook for 84.9 for the first quarter and 70 for the second quarter, or a total of 154.9 hours.

John Beverungen, Esq., worked 15 hours during the first quarter and 10 hours in the second quarter. Four hours in the first quarter are subtracted because Cook was already credited for attending the hearing on April 21, 1999, and local rules allow for the compensation of only one attorney at a hearing. *Id.*, Appendix B, 2(d). Thus, Beverungen shall be credited for 11 hours in the first quarter and 10 hours in the second, or 21 total hours.

Pursuant to Local Rule 109.2b, the County submitted an affidavit to support its request for $190.00 per hour for all attorneys, as the "the customary fee for such work in the local community." [8] That affidavit was authored by K. Donald Proctor, Esq., an attorney in private practice in Towson, who is well-acquainted with the quality of work performed by the County's attorneys, and who was also well-qualified to offer an opinion as to the prevailing attorney's fees in the Towson market. He attested that an attorney of Barnhart's experience and background would customarily charge between $200 and $225 for her time. Attorneys of Cook's and Beverungen's experience and background would customarily charge between $175 and $190 per hour. Motion for Attorney's Fees, Ex. 6 p. 3. This evidence is unrebutted.

---

**8.** This fee request is consistent with the guidelines in the appendix to the local rules stating that for lawyers of more than eight years experience, which each of these lawyers have, the permitted hourly rate is between $190 and $225. Appendix B, Rule 3(b). However, I grant Cook and Beverungen the lower amount of $175 per hour in accordance with the County's affidavit concerning customary fees in the Towson market. I depart from the guidelines, in part, because these rates are set

for attorney's fees awards to plaintiffs, not defendants, in civil rights cases, and they are based upon a survey of local attorneys concerning "the hourly rates paid on the defense side ... adding an upward adjustment to account for the risk of nonpayment faced by a plaintiff's lawyer in the event her client does not prevail." *Id.* n. 5. Clearly, as the *defendant's* attorneys, Cook, Beverungen and Barnhart are not entitled to an upward adjustment.

Accordingly, I calculate the County's fee award based upon an hourly rate for Barnhart of $200 and for Cook and Beverungen of $175, as follows:

| Attorney | Compensable Hours | Hourly Rate | Fees Awarded |
|---|---|---|---|
| Jeffrey Grant Cook | 154.9 | $175 | $27,107.50 |
| John Beverungen | 21 | $175 | $ 3,675.00 |
| Virginia Barnhart | 13.7 | $200 | $ 2,740.00 |
| | | Total | $33,522.50 |

(v)

For the foregoing reasons, I grant the County's Motion for Attorney's Fees and make an award in the amount of $33,-522.50. A separate order follows.

ORDER

In accordance with the foregoing Memorandum, it is this 30th day of November, 1999, by the United States District Court for the District of Maryland ORDERED

(1) That the defendant's motion for attorney's fees is GRANTED; and it is further ORDERED

(2) That Defendant Baltimore County is AWARDED attorney's fees in the amount of $33,522.50, AND JUDGMENT FOR THAT AMOUNT, THIRTY–THREE THOUSAND, FIVE HUNDRED TWENTY–TWO AND $^{50}/_{100}$ DOLLARS, IS HEREBY ENTERED IN FAVOR OF BALTIMORE COUNTY, MARYLAND AGAINST PLAINTIFF GREENSPRING RACQUET CLUB, INC., ONLY; and it is further ORDERED

(3) That the Clerk TRANSMIT copies of the foregoing Memorandum and this Order to all counsel of record.