UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GREENSPRING RACQUET CLUB,
INCORPORATED; WILLIAM HIRSHFELD;
LORETTA HIRSHFELD,
*Plaintiffs-Appellants,*

v.

BALTIMORE COUNTY, MARYLAND, a
body corporate and Politic,
*Defendant-Appellee,*

and

BALTIMORE COUNTY DEPARTMENT OF
PERMITS AND DEVELOPMENT
MANAGEMENT; ARNOLD M. JABLON,
Director, Department of Permits and
Development Management;
BALTIMORE COUNTY COUNCIL; S.G.
SAMUEL MOXLEY; KEVIN KAMENETZ;
T. BRIAN MCINTIRE; VINCENT J.
GARDINA; JOSEPH BARTENFELD,
Baltimore County Council
Members,
*Defendants.*

No. 99-2444

GREENSPRING RACQUET CLUB,
INCORPORATED; WILLIAM HIRSHFELD;
LORETTA HIRSHFELD,
            *Plaintiffs-Appellants,*

                v.

BALTIMORE COUNTY, MARYLAND, a
body corporate and Politic,
            *Defendant-Appellee,*

                and

BALTIMORE COUNTY DEPARTMENT OF
PERMITS AND DEVELOPMENT
MANAGEMENT; ARNOLD M. JABLON,
Director, Department of Permits and
Development Management;
BALTIMORE COUNTY COUNCIL; S.G.
SAMUEL MOXLEY; KEVIN KAMENETZ;
T. BRIAN McINTIRE; VINCENT J.
GARDINA; JOSEPH BARTENFELD,
Baltimore County Council
Members,
            *Defendants.*

No. 00-1012

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-99-469-AMD)

Argued: June 8, 2000

Decided: October 31, 2000

Before MURNAGHAN,* WILLIAMS, and MICHAEL,
Circuit Judges.

*Judge Murnaghan heard oral argument in this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Robert Henry Freilich, FREILICH, LEITNER & CARLISLE, Kansas City, Missouri, for Appellants. Jeffrey Grant Cook, OFFICE OF LAW, Towson, Maryland, for Appellee. **ON BRIEF:** Virginia W. Barnhart, County Attorney, John E. Beverungen, OFFICE OF LAW, Towson, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Greenspring Racquet Club, Inc., William Hirshfeld, and Loretta Hirshfeld (collectively "Greenspring") claim that application of Baltimore County Council Bill 111-98 to property located on Falls Road in Baltimore County violates their Fifth and Fourteenth Amendment rights under the federal Constitution. The United States District Court for the District of Maryland granted the County's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted and shortly thereafter granted the County's motion for attorney's fees under 42 U.S.C.A. § 1988 (West 1994 & Supp. 2000). This appeal followed. We affirm the dismissal under Rule 12(b)(6) of all claims but the as-applied takings claim. We hold that the as-applied takings claim is not ripe and therefore should have been dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Because the district court's award of attorney's fees was based in part upon a finding that the unripe as-applied takings claim is frivolous, we vacate the award of attorney's

fees and remand the attorney's fee issue to the district court for reconsideration in light of this opinion.

## I.

William and Loretta Hirshfeld own the property at issue in this case — a 5.5 acre parcel on the east side of Falls Road in Baltimore County, Maryland — which they lease to Greenspring Racquet Club, Inc. Greenspring currently operates a tennis club on the property; however, Greenspring wants to tear down the tennis club and build one or more office buildings and a parking garage in the club's place.

To this end, Greenspring developed plans to raze the tennis club and to construct two adjoining office towers, one five stories and one six stories, with an attached parking garage. In June 1998, Greenspring submitted a letter to the Baltimore County Development Review Committee ("DRC") requesting that Greenspring be exempt from portions of the process for public approval of the building plan pursuant to Baltimore County Code, County Development Regulations, § 26-171(b)(9). Greenspring maintains that it is legally entitled to a (b)(9) exemption because the proposed development qualifies as a "minor development" under the Code. The DRC responded to Greenspring by letter, and denied the requested (b)(9) exemption from portions of the public review process. An open hearing was held on June 22, 1998 to further consider the matter, but Greenspring's request for a (b)(9) exemption was never granted.

On June 26, 1998, Greenspring filed suit in state court seeking mandamus, declaratory, and injunctive relief from the denial of the (b)(9) exemption. Greenspring argued that it is entitled to the exemption and that denial by the DRC was unlawful.

Meanwhile, on October 5, 1998, the County Council enacted a new zoning ordinance, Bill 111-98, which imposed more restrictive limits on building improvements in areas with certain zoning designations located near rural conservation zones. Specifically, Bill 111-98 imposed a height limit of 35 feet and a floor area ratio ("FAR") of .5 in areas zoned "Business Light," "Business Major," or "Business Rural" when the exterior wall of any proposed building is within 750 feet of a rural conservation zone. The County asserts that Bill 111-98

affects 150 sites in Baltimore County. Greenspring asserts that the new restrictions only apply to its site and one other within the county.

In January 1999, Greenspring amended its state court complaint by adding counts seeking damages and compensation under the state and federal constitutions. Greenspring reserved its federal claims, calling the action a "*Jennings-Fields* reservation." In February 1999, the County removed the case to federal court and filed a motion to dismiss.

In the meantime, Greenspring was still doing battle directly with the Baltimore County zoning authorities. After Bill 111-98 was enacted, Greenspring asked the Baltimore County Planning Board ("the Board") to rezone Greenspring's Falls Road property from a "Business Major" zone to an "Office/Residential-2" zone, in order to avoid the more restrictive limitations contained in Bill 111-98. In March of 1999, the Board denied Greenspring's request.

In April 1999, Greenspring submitted another request to the DRC asking, again, for a (b)(9) exemption from certain public approval procedures. Along with this second request, Greenspring included a revised site plan describing construction of one eight-story office tower with a garage. The proposed building in the revised plan was confined to the same "footprint" as the pre existing improvements on the property (the tennis club), had a per-story square footage less than that of the pre-existing building, and required, according to Greenspring, no public works agreement. For these reasons, Greenspring explained to the DRC, the revised plan should be exempt from the new limitations imposed by Bill 111-98, under section 2 of that ordinance.

The DRC held an open meeting in May of 1999 to consider Greenspring's request for both a (b)(9) exemption from the public review process and a section 2 exemption from the new limits contained in Bill 111-98. The DRC denied the request for the (b)(9) exemption, again, but did not discuss the section 2 exemption.

After a hearing in the district court, Greenspring filed a Second Amended Complaint seeking declaratory, injunctive, and monetary relief under § 1983 for violations of the Fifth and Fourteenth Amend-

ments. Greenspring included seven counts in the Second Amended Complaint, alleging state action which amounted to (1) a denial of procedural due process; (2) facial and as-applied takings; (3) facial and as-applied violations of the Equal Protection Clause; and (4) facial and as-applied violations of substantive due process. At the core of Greenspring's elaborate complaint is the contention that Bill 111-98 was adopted in bad faith, with an intent to discriminate against Greenspring, and that the Bill fails to advance a legitimate state interest.

On June 7, 1999, the County filed a Rule 12(b)(6) motion to dismiss. Greenspring opposed this motion, and urged the district court to abstain from consideration of the motion because of ripeness requirements relating specifically to the as-applied takings claim. In September 1999, the district court issued an order granting the County's motion and dismissing the case with prejudice. *See Greenspring Racquet Club v. Baltimore County*, 70 F. Supp. 2d 598, 607 (D. Md. 1999).

In October of 1999, the County filed a motion seeking attorney's fees under § 1988, which the district court awarded. *See Greenspring Racquet Club v. Baltimore County*, 77 F. Supp. 2d 699, 705 (D. Md. 1999). Greenspring now appeals the order granting the 12(b)(6) motion, the district court's refusal to abstain from consideration of the 12(b)(6) motion, and the subsequent award of attorney's fees. We will consider each issue in turn.

## II.    *The District Court's Grant of the 12(b)(6) Motion*

This court reviews de novo a district court's order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). A district court should not grant a motion to dismiss under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). We will first examine the district court's dismissal

of the as-applied takings claim and then turn to the facial takings, equal protection and due process claims.

## A.   *As-Applied Takings Claim*

We first examine the district court's dismissal with prejudice of Greenspring's as-applied takings claim. Because Greenspring's takings claim is still pending in state court, Greenspring argues that the district court ruled prematurely on the County's Motion to Dismiss. Greenspring claims that as applied to the property on Falls Road in Baltimore County, Bill 111-98 effects a regulatory taking without just compensation. Greenspring asserts that the application of Bill 111-98 will cause a 95.6% reduction in economically viable use of the property. This, Greenspring asserts, amounts to a taking. The district court dismissed Greenspring's as-applied takings claim, however, on the basis that Greenspring could not establish that the regulations at issue deprived Greenspring of economically viable use of the property. *See Greenspring Racquet Club v. Baltimore County*, 70 F. Supp. 2d 598, 603 (D. Md. 1999).

Subject matter jurisdiction is a logical prerequisite to dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6). Whether a district court has subject matter jurisdiction is a question of law subject to de novo review. *See Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 316 (4th Cir. 2000). In *Williamson County Reg'l Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985), the Supreme Court established a set of ripeness requirements for Just-Compensation-Clause actions against local governments. *See id.* at 190-91. Failure to satisfy the *Williamson* ripeness requirements is fatal to the presence of federal court subject matter jurisdiction for a claim founded on the Fifth Amendment Just Compensation Clause. *See Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 283 (4th Cir. 1998) (discussing the *Williamson* "ripeness requirement . . . for the existence of federal court subject matter jurisdiction. . .").

A claim alleging that a state or local governmental body has violated the Fifth Amendment Just Compensation Clause is not ripe under *Williamson* until a landowner has satisfied two requirements. First, a property owner must test the regulation's limits by exhausting

available administrative exemption or variance procedures. *See Williamson County*, 473 U.S. at 186-88. Until there is a final decision as to the challenged regulation's scope, no taking occurs, and the claim is not ripe. The second ripeness prerequisite is that the governmental body actually must have denied compensation for the taking. *See id.* at 194-95. The nature of the constitutional injury in a Just-Compensation-Clause case is twofold: the government must have: (1) taken private property, (2) without just compensation. *See id.* at 195 (recognizing that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation . . ."). *Williamson*, therefore, requires a federal takings litigant first to litigate in state court.[1]

Greenspring has satisfied the first of the two ripeness preconditions, but it has *not* satisfied the second. Greenspring has not yet been denied just compensation because its takings claim is still pending in

---

[1]The Eleventh Circuit addressed the awkward posture of a plaintiff in state court who must raise his federal takings claim, or else risk having that claim precluded by the principles of res judicata in *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1303 (11th Cir. 1992). In that case, the Eleventh Circuit held that a takings litigant may "reserve" his federal claim at the time he brings the state claim required by *Williamson County Reg'l Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985). *Id.* at 1306. The *Fields* court believed that its holding in the *Williamson* context was dictated by its predecessor circuit's holding in *Jennings v. Caddo Parish School Dist.*, 531 F.2d 1331, 1332 (5th Cir. 1976), that a reservation of federal questions pursuant to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964), ordinarily applicable in the context of *Pullman* abstention, may be entered even where a litigant has filed suit first in state court. Influenced by *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 85 n.7 (1984), however, the *Fields* court limited *Jennings* to circumstances in which a litigant is involuntarily forced to litigate first in state court. Thus, once the state has had a chance to decide whether there was any taking of property and if so whether any compensation is due, a litigant may return for his day in federal court to resolve his federal takings claim. This Circuit indicated agreement with the *Fields* approach in *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 283 (4th Cir. 1998) (praising the *Fields* reservation practice as premised on "cogent analysis" and recommending that district courts advise takings litigants of their right to make such reservations).

state court. Thus, Greenspring's federal as-applied takings claim is not ripe. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 718 (1999) (plurality opinion of Kennedy, J.) ("Simply put, there is no constitutional or tortious injury until the landowner is denied just compensation."). Accordingly, no case or controversy presently exists, and the district court was without subject matter jurisdiction over that claim. Thus, dismissal should not have been for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), but rather should have been under Federal Rule of Civil Procedure 12(b)(1), governing the dismissal of claims for lack of subject matter jurisdiction.

As noted above, the district court dismissed all counts of Greenspring's amended complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). *See Greenspring Racquet Club Inc. v. Baltimore County*, 70 F. Supp. 2d 598, 607 (D. Md. 1999). With respect to the as-applied takings claim, the district court based its Rule 12(b)(6) dismissal on its holding that Greenspring could not establish that the regulations at issue deprived Greenspring of all economically viable use of the property. *See id.* at 604-05. Because the District Court was without subject-matter jurisdiction over the as-applied takings claim, however, it was precluded from dismissing that claim on the merits with prejudice. Greenspring may return to federal court to litigate the as-applied takings claim once Greenspring has exhausted Maryland's inverse condemnation procedures.

### B.   *Facial Takings Claim*

Greenspring next argues that enactment of Bill 111-98 was facially unconstitutional as a violation of the Takings Clause of the Fifth Amendment. In *Agins v. City of Tiburon*, 447 U.S. 255 (1980), the Supreme Court explained that a facial takings claim raises the question of whether the mere enactment of a zoning ordinance constitutes a taking. *See id.* at 260. A general zoning law effects a taking "if the ordinance does not substantially advance legitimate state interests, or denies an owner economically viable use of his land." *Id.* (internal citations omitted).

In this case, the district court found that Greenspring could prove no facts to satisfy either element of the *Agins* test. *See Greenspring*

*Racquet Club*, 70 F. Supp. 2d at 603-05. The height and density limits contained in Bill 111-98 are ordinary zoning restrictions and, quite obviously, they substantially advance a legitimate state interest in controlling dense development in areas located near rural conservation zones. The district court took note of statements made by Baltimore County Councilman Bryan McIntire, explaining that the restrictions in Bill 111-98 would avoid the detrimental impact on traffic, roads, sewers, and water use that can result from dense development.[2] *See id.* at 603. These rationales "clearly fall within those recognized by the courts as reasonable bases for zoning laws." *Id. (citing Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 828-29 (4th Cir. 1995)).

Greenspring contends that while a desire to limit traffic, water, or sewer use may be a legitimate state interest as a matter of law, whether Bill 111-98 "substantially advances" that interest is a fact question to be resolved by a jury. To support its argument, Greenspring relies heavily upon *City of Monterey v. Del Monte Dunes*, 526 U.S. 687 (1999). Greenspring's reading of *Del Monte Dunes*, however, is misleading. In *Del Monte Dunes*, the jury was asked to decide whether a particular decision to deny a building permit "substantially advanced" a legitimate state interest. *See id.* at 700. Whether the local zoning laws themselves advanced a legitimate state interest was not the question before the jury. In fact, the Court said that where a plaintiff brings a broad challenge to the constitutionality of the city's zoning ordinances themselves (rather than challenging a particular decision made pursuant to those ordinances), "the determination

---

[2]Greenspring argues that consideration of the councilman's statements was inappropriate at the motion to dismiss stage, because those statements were not contained in the pleadings. We disagree. Statements made by the sponsor of legislation during a legislative debate are an important part of the legislative history of a bill. *See United States v. Newport News Shipbuilding & Dry Dock Co.*, 837 F.2d 162, 167 (4th Cir. 1988). Moreover, at the 12(b)(6) stage "the legislative history of an ordinance is not a matter beyond the pleadings" because matters of public record may properly be taken into account. *See Anheuser-Busch v. Schmoke*, 63 F.3d 1305, 1311 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996); 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (1990).

whether the statutory purposes were legitimate, or whether the purposes, though legitimate, were furthered by the law or general policy, might well fall within the province of the judge." *Id.* at 722.

Greenspring's suggestion, moreover, does not make any logical sense. If the question of whether a zoning ordinance substantially advances a legitimate state interest is always a triable issue of fact for a jury, then every challenge to any zoning regulation would warrant a jury trial in federal court. We cannot accept such a remarkable proposition and decline Greenspring's invitation to open the federal courthouse to a veritable flood of local land use litigation by putting every such allegation before a jury. When statements by local lawmakers set out legitimate reasons for imposing height and density restrictions on property in a particular class of zones, there can be no claim in federal court that the law fails to substantially advance a legitimate purpose.

The second prong of the *Agins* rule requires a plaintiff to show that the mere enactment of a zoning ordinance "denies an owner economically viable use of his land." 447 U.S. at 260. Because Greenspring currently operates a viable tennis club on the property at issue, and the enactment of Bill 111-98 will not prohibit Greenspring from continuing to do so, the district court found that Greenspring could prove no set of facts to establish that Bill 111-98 denies Greenspring economically viable use of the land. Greenspring objects to the district court looking beyond the pleadings, but the fact of the tennis club's current operation is acknowledged in the pleadings.[3] Greenspring asks this court to ignore reality and find that it conceivably could prove that the mere enactment of the zoning ordinance denies them all viable economic use of the property. We conclude that there is no way for Greenspring to prove such a claim, considering the currently operational tennis club and the possibility of building something new on the property within the limits imposed by Bill 111-98.

The district court correctly found that Greenspring could prove no set of facts to sustain a facial takings claim regarding Bill 111-98.

---

[3]*See* Second Amended Complaint, ¶ 12 (stating that "there is adequate infrastructure and capacity . . . which are currently being used by the existing athletic/racquet club to accommodate the proposed development.").

Thus, the motion to dismiss was properly granted as to the facial takings claim.

## C.    *Equal Protection Claims*

Greenspring's equal protection claims are based on the assertion that Bill 111-98 was passed in bad faith with discriminatory intent. These allegations, however, are not sufficient to state an equal protection claim because the law at issue easily passes rational basis scrutiny.

When "government action [does] not burden a fundamental right or employ a suspect classification, the pertinent question for determining whether the governmental action violated the Equal Protection Clause is whether the . . . officials reasonably could have believed that the action was rationally related to a legitimate governmental interest." *Front Royal & Warren County Industrial Park Corp. v. Town of Front Royal*, 135 F.3d 275, 290 (4th Cir. 1998).

Greenspring does not allege that Bill 111-98 utilizes a suspect classification or burdens a fundamental right. Rational basis review is therefore the proper standard for evaluating this claim. Greenspring contends, however, that even under rational basis review, the enactment of Bill 111-98 must be struck as constitutionally invalid. Greenspring alleges that the ordinance was enacted by local authorities with malicious, bad-faith, discriminatory intent, which, of course, is not related to any legitimate state purpose. These allegations, according to Greenspring, are enough to survive the motion to dismiss. We disagree.

The facial equal protection challenge to the law must fail because on its face Bill 111-98 applies to all property within the delineated zones — it is a generally applicable law, and all similarly situated persons are treated alike. The as-applied equal protection challenge also must fail, because there is an obvious, legitimate basis for the Bill's enactment: restricting dense growth in areas located near rural conservation zones. While Greenspring is free to speculate about the hostility that local officials directed toward them, in order to state an equal protection claim Greenspring also must demonstrate that there is no other legitimate purpose for the law. In other words, Green-

spring must allege that malice and bad faith were the *only conceivable* bases for enacting Bill 111-98, and this they cannot do. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993) (stating that "[t]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'") (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Where an obvious, legitimate purpose is evident on the face of a challenged law, an equal protection claim under rational basis review must fail.[4] Thus, we conclude that both the facial and as-applied equal protection claims properly were dismissed.

## D.   *Due Process Claims*

Finally, Greenspring argues that the enactment and application of Bill 111-98 deprives it of both substantive and procedural due process. The procedural due process claim easily is dismissed, because administrative and judicial appeals from all Baltimore County zoning decisions are readily, if not speedily, available. The mere fact that post-deprivation remedies may take some time to pursue does not render them constitutionally infirm. *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817, 827 (4th Cir. 1995).

The substantive due process claim is based specifically upon Greenspring's allegation that Bill 111-98 is arbitrary and capricious and, therefore, not related to any legitimate governmental interest. Greenspring fails to address, however, the threshold inquiry in any due process claim: In order to state a viable due process claim, Green-

---

[4]This fundamental tenet of equal protection jurisprudence is not changed by the Supreme Court's recent decision in *Village of Willowbrook v. Olech*, 120 S. Ct. 1073 (2000). In *Olech*, local zoning authorities demanded a 33-foot easement as a condition of connecting plaintiff's property to the municipal water supply although only a 15-foot easement was required from other similarly situated property owners. The Court held that the complaint, which alleged that the local zoning decision was "irrational and wholly arbitrary," was sufficient to state a claim for relief under traditional equal protection analysis. Because the local zoning decision at issue in the instant case is not "irrational and wholly arbitrary," Greenspring's complaint is easily distinguished from the complaint at issue in *Olech*.

spring must do more than attack the quality of the legislative process in Baltimore County; Greenspring must identify a constitutionally protected property interest upon which Bill 111-98 infringes.[5] If no protected property interest exists, there is no need to consider whether any alleged deprivation of that interest was effected with "due process." *See Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir. 1983) (stating that "[t]he starting point for our [due process] inquiry is to determine whether state or local law afforded Scott a 'protectible property interest in the permit' sufficient to trigger federal due process guarantees").

A constitutionally protected property interest must be "more than an abstract need or desire . . . . [and] more than a unilateral expectation" and instead must be something to which one has a "legitimate claim of entitlement." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Greenspring has no legal entitlement to develop the Falls Road property with buildings in excess of 35 feet in height and .5 FAR. Greenspring certainly had such an *expectation*, but because Greenspring had no legally vested *right* to develop the property in this way, it cannot claim a constitutionally protected property interest in doing so. Because Greenspring has no constitutionally protected property interest in development of the property outside the bounds of Bill 111-98, Greenspring does not state a viable substantive due process claim. We therefore conclude that the claim properly was dismissed.

In summary, the district court properly dismissed Greenspring's due process, equal protection, and facial takings claims under Rule 12(b)(6).

---

[5]Greenspring argued below, and on appeal, that it has a constitutionally protected property interest in a (b)(9) exemption from portions of the public review process usually required as a prerequisite to issuance of a building permit. We note, however, that the parties have since agreed that Greenspring's application to amend the site plan must be subject to the approval regulations in effect in 1975, the year that the original site plan was approved. *See Greenspring Racquet Club v. Baltimore County*, No. 99-4790, slip op. at 1 (Cir. Ct. Baltimore County, May 16, 2000). The disagreement over whether Greenspring legally is entitled to the (b)(9) exemption is therefore moot, and we will accordingly restrict our discussion of the due process claim to the enactment and application of Bill 111-98.

### III.   *The District Court's Refusal to Abstain from Consideration of the 12(b)(6) Motion*

Greenspring argues that the district court should have abstained from ruling on each of its claims. We review the district court's decision not to abstain from hearing a case for abuse of discretion. *See Pomponio v. Fauquier County*, 21 F.3d 1319, 1324 (4th Cir. 1994).

The abstention issue is relevant only to Greenspring's as-applied takings claim and is based upon the ripeness requirements set forth in *Williamson County Reg'l Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985). *Williamson*, however, is not an abstention doctrine but a jurisdictional rule calling for dismissal simply because the federal courts do not possess subject matter jursidiction over a takings claim until *Williamson*'s requirements have been met. *See Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 283 (4th Cir. 1998) (indicating that subject matter jurisdiction is lacking when *Williamson*'s ripeness requirements have not been met). Thus, while the difference may appear merely formal, the district court's error was not in refusing to abstain, but, rather, in reaching the merits of a claim over which it possessed no jurisdiction.

### IV.   *The Award of Attorney's Fees*

Finally, Greenspring asserts that the district court erred in awarding attorney's fees to the County. This court reviews an attorney's fee award for abuse of discretion. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999). By definition, a district court abuses its discretion when it makes an error of law. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section . . . 1983 . . . the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988(b) (West 2000). Fee motions must be filed within fourteen days of judgment pursuant to District of Maryland Local Rule 109.2, and failure to timely file a fee request can justify the court of appeals in vacating a district court's award of attorney's fees. *See Ortega v. Geelhaar*, 914 F.2d 495, 498 (4th Cir. 1990). An applicant must present properly authenticated and accurate documentation for an attor-

ney's fee request. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

An award of attorney's fees to a defendant in a § 1983 suit only may be made where a plaintiff's claims are "'frivolous, unreasonable or without foundation, even though not brought in subjective bad faith.'" *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (*quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

The district court found that Greenspring's claims were "wholly without foundation." *Greenspring Racquet Club Inc. v. Baltimore County*, 77 F. Supp. 2d 699, 703 (D. Md. 1999). The due process and equal protection claims were deficient under obvious and well established legal principles. As the entire preceding analysis indicates, the district court's conclusion that Greenspring's due process, equal protection and facial takings claims were "frivolous and unreasonable" is amply supported by the record and well within the district court's appropriate exercise of discretion. The district court's award of attorney's fees also clearly rested upon a finding that the unripe as-applied takings claim was entirely frivolous. We have held, however, in Section II.A that a district court may not make such a determination with respect to an unripe claim, because such a determination would finally dispose of the merits of a claim over which the district court did not possess subject matter jurisdiction.

The First Circuit has held that where a plaintiff brings interrelated claims, some of which are frivolous and some of which are not frivolous, a district court may award fees to the defendant under § 1988 for the costs of defending the frivolous claims. *See Ward v. Hickey*, 996 F.2d 448, 455 (1st Cir. 1993). The First Circuit has indicated that the District Court should calculate a fee amount in light of the fact that only some of the claims at issue were found to be frivolous. *See id.* (stating that "a district court should not deny fees for defending frivolous claims merely because calculation would be difficult" and thus implying that calculation of an appropriate fee amount could not include fees attributable to the non-frivolous claims). The Sixth Circuit has held that a district court does not abuse its discretion by entirely denying a defendant's request for attorney's fees under § 1988 on the basis that some of the plaintiff's claims were meritorious even though others may have been frivolous. *See Wayne v. Vil-*

*lage of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994). No circuit, however, has held that a district court may award attorney's fees for the costs of defending non-frivolous portions of a § 1983 suit. Our holding in Section II.A necessarily means that at this stage in the litigation, the district court may not definitively determine that Greenspring's unripe as-applied takings claims are frivolous. Thus, the impossibility of making a determination of frivolity as to the unripe as-applied claims makes it necessary for us to vacate the District Court's award of attorney's fees and remand this issue for reconsideration in light of this opinion.[6] On remand, the District Court may wish to recalculate the fee amount, excluding any amount attributable to the unripe as-applied takings claim, or it may wish instead to entirely defer consideration of the attorney's fees issue until such time as the as-applied takings claim becomes ripe.

## V.

For the foregoing reasons, the orders entered by the district court are affirmed except insofar as they dismiss Greenspring' as-applied takings claim and insofar as they award attorney's fees to the County under § 1988. The order dismissing the as-applied takings claim is vacated and the case is remanded with instructions to dismiss that claim without prejudice under Fed. R. Civ. P. 12(b)(1) on the ground

---

[6]Greenspring also lodges two specific complaints regarding the fee award. We address these issues because they "surely would be raised again on remand with attendant delays of hearing and appeal." *South Carolina ex rel. Tindal v. Block*, 717 F.2d 874, 887 (4th Cir. 1983). First, Greenspring argues that the motion for fees was not timely. This issue will arise on remand if the District Court decides to recalculate the fee award based upon the initial application. Federal Rule of Civil Procedure 6(b)(2) grants the trial judge discretion to accept a fee motion beyond the prescribed time limits. The district court's decision to do so in this case was entirely reasonable. Second, Greenspring challenges the time records submitted by the County. Admittedly, the records are not entirely regular; they are hand written, for example. However, the district court found that the records comply with the requirements outlined in the local court rules and accurately reflect the time spent by defendant's counsel. We find that the district court's resolution of this issue was within "the district court's broad discretion" in calculating an attorney's fee award. *Daly v. Hill*, 790 F.2d 1071, 1085 (4th Cir. 1986).

that the district court lacks subject-matter jurisdiction. The order awarding attorney's fees is vacated and the issue of attorney's fees is remanded for reconsideration in light of this opinion.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*